UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

REGAN ADAM REYNOLDS,

                    Petitioner,                              Case No. 1:19-cv-383

v.                                                          Honorable Paul L. Maloney

RANDEE REWERTS,

                    Respondent.
_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I. Factual allegations

Petitioner Regan Adam Reynolds is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Michigan. On December 12, 2011, Petitioner pleaded guilty in the Kent County Circuit Court to kidnapping and conspiracy to commit kidnapping, in violation of Mich. Comp. Laws § 750.349, and first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a. On January 5, 2012, the court sentenced Petitioner as a habitual offender-second offense, Mich. Comp. Laws § 769.10, to concurrent prison terms of 20 to 60 years for kidnapping and conspiracy to commit kidnapping, followed by a consecutive term of 10 to 30 years for first-degree home invasion. (Jan. 5, 2010 J. of Sentence, ECF No. 2-1, PageID.185.) The trial court resentenced Petitioner on March 6, 2014, to the same sentence. (Sentencing Tr. II, ECF No. 2-1, PageID.245-246.) Following a resentencing hearing on May 12, 2016, the trial court resentenced Petitioner, and again the court imposed the same sentence. (May 12, 2016 J. of Sentence, ECF No. 2-3, PageID.409.)

On May 8, 2019, Petitioner filed his habeas corpus petition raising 13 grounds for relief, as follows:

I. The trial court erred in denying Petitioner's motion to withdraw his guilty plea where Petitioner's convictions were not supported by facts sufficient to find guilt on any of the crimes [of which he was] convicted.

II. The trial court erred in denying Petitioner's motion to withdraw his guilty plea where Petitioner plea was illusory, under faulty advice, without effective assistance of counsel, without understanding, and where it was breached by the prosecution.

III. Petitioner was denied his right to have effective assistance of counsel where counsel failed to object to several issues that he should have.

IV.     Petitioner was denied his right to have effective assistance of counsel where counsel failed to do an independent investigation of the facts of the case or relevant statutes or case law.

V.     The prosecutor violated the plea agreement by asking for consecutive sentences and by withholding a medical bill until the day of sentencing therefore also violating *Brady*.

VI.     The trial court erred in imposing restitution and court costs as they were not part of the plea agreement.

VII.     The Petitioner was illegally arrested for questioning and his statement to the Grandville Police should have been suppressed.

VIII.     The trial judge should be disqualified because he is personally biased against the Petitioner and he used personal knowledge of disputed facts against the Petitioner.

IX.     The trial judge should be disqualified because he failed to follow the ruling of the Michigan Court of Appeals when Petitioner was resentenced.

X.     Petitioner is entitled to resentencing where the statutory sentencing guidelines were misscored which affected the statutory sentencing guideline range.

XI.     Petitioner was denied his right to have effective assistance of counsel where appellate counsel failed to investigate meritorious issues and abandoned the Petitioner.

XII.     Petitioner was denied his right to file a Standard 4 Supplemental brief in the Michigan Court of Appeals.

XIII.     Petitioner is actually innocent of all the crimes of which he was convicted.

(Pet'r's Mem. of Law, ECF No. 2, PageID.41-42.)

Petitioner has submitted exhibits with his memorandum of law that include virtually all of the significant documents in the state court record. The exhibits are voluminous in part because, since Petitioner was initially sentenced on January 5, 2012, he has filed four separate applications for leave to appeal in the Michigan Court of Appeals and three separate applications for leave to appeal in the Michigan Supreme Court. The volume is also enhanced by Petitioner's

practice of routinely filing *pro per* briefs to supplement the appellate submissions of his appointed counsel.

Despite filing more than a ream of state court briefs, Petitioner omitted the only "Statement of Facts"—the statement from his first appellate counsel's application for leave to appeal—that addressed the facts at issue in his prosecution. The factual statements in all subsequent briefing relate only to the procedural history or sentencing issues that are generally unrelated to the actual crimes of which he was convicted.

Factual information regarding Petitioner's crimes appears in his plea transcript and the sentencing transcripts for Petitioner and his fellow kidnappers. Those sources disclose that Petitioner and two other individuals planned to kidnap and restrain Petitioner's ex-mother-in-law with the intent to hold her for ransom. (Pet'r's Plea Tr., ECF No. 2-1, PageID.108.; Pet'r's Sentencing Tr. I, ECF No. 2-1, PageID.118.) The two other individuals went into the victim's home with a knife, removed her, and communicated the ransom demand to her husband. (Pet'r's Plea Tr., ECF No. 2-1, PageID.108; Pet'r's Sentencing Tr. I, ECF No. 2-1, PageID.117.) Petitioner did not go inside the home. (Pet'r's Plea Tr., ECF No. 2-1, PageID.108.) Other than his role in planning the crime, he only drove a vehicle. (Pet'r's Plea Tr., ECF No. 2-1, PageID.109.)

Petitioner's co-conspirators duct-taped the victim's hands and feet, put her in her own car and then took her to a cornfield. (Pet'r's Sentencing Tr. I, ECF No. 2-1, PageID.121.) In the cornfield, they attempted to duct tape her to a telephone pole. (*Id.*) The sentencing judge reported, however, that Petitioner's colleagues did not have enough duct tape. (*Id.*, PageID.130.) A kidnapper told the victim not to leave and then left to get more duct tape. (*Id.*) After the victim was left alone, however, despite the threat to kill her if she moved, the victim escaped. (*Id.*)

Petitioner has also supplied the Grandville Police Department's probable cause affidavit. (ECF No. 2-2, PageID.401-402.) The affidavit reveals that Petitioner's colleagues were "remorseful and regretful." (*Id.*) They turned themselves into the Grandville Police and confessed. They identified Petitioner as the third participant. Petitioner was taken into custody by way of a felony traffic stop. He was interviewed at the police station. He confessed.

Petitioner entered his plea on December 12, 2011, the day scheduled for trial. Petitioner's fellow kidnappers had entered pleas of guilty several weeks before.

Petitioner's plea agreement is memorialized in the plea hearing transcript and then repeated in the trial court's order remanding Petitioner to the Kent County Jail. (Plea Hr'g Tr., ECF No. 2-1, PageID.103-111; Kent Cty. Cir. Ct. Order, ECF No. 2-1, PageID.101.) The prosecutor reported the terms of the plea agreement as follows:

> Your Honor, upon a successful plea and sentence to counts one, two and three and as a second felony offender, the Prosecutor's office would dismiss count four, which is a charge of conspiracy to commit home invasion. We are also recommending that the defendant be sentenced within the applicable Sentencing Guidelines. And in calculating those Guidelines, we've agreed, counsel and I, that offense variable seven be scored as zero points. Just so everyone's on the same page here, the way counsel and I score the Guidelines, it would require the Court to impose a term of years sentence as his Guidelines would not include the possibility for a life sentence. So, it'd be a term-of-years sentence. It should also be understood that the sentences for counts one and two, kidnapping and conspiracy to kidnap could potentially be consecutive to count three, home invasion, but whether those run concurrently or consecutively would be up to Your Honor's discretion.

(Plea Hr'g Tr., ECF No. 2-1, PageID.107.) Petitioner and his counsel agreed that the prosecutor's report captured the complete agreement between the parties. (*Id.*) Petitioner testified that no promises were made to him other than as reported by the prosecutor. (*Id.*) Petitioner's counsel concurred. (*Id.*, PageID.109.) The court's order of remand simply echoed the agreement reported

on the record: "Pros. to dismiss home invasion consp, and recommends sent. w/in guidelines. parties agree that OV 7 be scored at zero and that sentence would be term of years, not mandatory life. Consecutive sent. to be at court's discretion." (Kent Cty. Cir. Ct. Order, ECF No. 2-1, PageID.101.)

Although there is no mention of the calculated guidelines in the plea transcript, at Petitioner's sentencing, the trial judge acknowledged that the court and counsel had discussed a calculated minimum sentence guideline range of 171 to 356 months in connection with the plea discussions. (Sentencing Tr. I, ECF No. 2-1, PageID.128.) The scoring at Petitioner's first sentencing hearing yielded a much higher range: 225 to 468 months. (*Id.*) With respect to the kidnapping convictions, the range was determined based on a prior record variable (PRV) score of 110 and an offense variable (OV) score of 90. (*Id.*, PageID.120.) Even though the actual scoring yielded a higher minimum range than the initial estimate, the court informed Petitioner and both counsel that he intended to sentence using the minimum guideline range discussed during the course of the plea. (*Id.*, PageID.128.)

At Petitioner's sentencing hearing, Petitioner attempted to withdraw his plea, claiming that his counsel had rendered ineffective assistance. (*Id.*, PageID.124.) The trial court denied relief. (*Id.*, PageID.125-127.) The Court proceeded to sentence Petitioner as described above. The 20-year minimum on Petitioner's kidnapping convictions fell within the actual calculated minimum sentence guideline range as well as the estimate.

Thereafter, Petitioner's case followed a tortuous procedural path. He sought leave to appeal in the Michigan Court of Appeals raising several of his habeas issues. The court of appeals denied leave for lack of merit in the grounds presented. Petitioner then sought leave in the

Michigan Supreme Court. That court denied leave as to all issues except a sentence guideline variable scoring issue. (Mich. Order, ECF No. 2-1, PageID.235.) The supreme court concluded that the trial court had erred in scoring OV 12, regarding contemporaneous criminal acts, and OV 13, regarding a continuing pattern of criminal behavior. (*Id.*) The trial court scored both OVs as if Petitioner's conspiracy conviction were a crime against a person. Just a few days after Petitioner was sentenced, however, the Michigan Supreme Court had stated that conspiracy convictions are not crimes against a person even if the crime at the heart of the conspiracy would be properly categorized as a crime against a person. *See People v. Pearson*, 807 N.W.2d 45 (Mich. 2012). Based on that issue, the supreme court vacated Petitioner's sentences and remanded to the trial court for resentencing. (Mich. Order, ECF No. 2-1, PageID.235.)

The trial court adjusted the scoring as directed by the supreme court. (Sentencing Tr. II, ECF No. 2-1, PageID.239-240.) The change dropped Petitioner's offense variable score from 90 to 61, moving his guidelines minimum sentence range from 225 to 468 months to 171 to 356 months. The recalculated range matched the estimated range upon which the parties had relied during plea discussions and, accordingly, upon which the trial court had founded its sentence in the first instance. Not surprisingly, the court sentenced Petitioner to the same terms of incarceration. During the hearing, Petitioner moved to withdraw his plea. The court denied relief.

Petitioner again sought leave to appeal in the Michigan Court of Appeals. That court denied leave because the issues raised were meritless with respect to all but two issues: a sentence guideline variable scoring issue, this time on the PRV side of the guidelines table, and the impact of the "law of the case" doctrine. (Mich. Ct. App. Order, ECF No. 2-1, PageID.324.) After briefing, the court of appeals vacated Petitioner's sentence again. (Mich. Ct. App. Op., ECF

No. 2-1, PageID.336-341.) The court of appeals concluded that three of Petitioner's prior felonies should have been scored as low severity rather than high severity. (*Id*.) That altered Petitioner's PRV score from 110 to 60 and led to a change in his guidelines minimum sentence range on the kidnapping convictions from 171 to 356 months to 135 to 281 months. The appellate court remanded for resentencing.

The trial court adjusted the scoring once again. (Sentencing III Tr., ECF No. 2-1, PageID.343-351.) Petitioner again moved to withdraw his plea, a motion that the court denied. The court then, for the third time, resentenced Petitioner to the same sentence. The trial court acknowledged the impact of the intervening decision in *People v. Lockridge*, which rendered the Michigan sentencing guidelines advisory rather than mandatory. (*Id*., PageID.250-251.) Petitioner sought leave to appeal in the Michigan Court of Appeals. That Court denied leave for lack of merit in the grounds presented. (Mich. Ct. App. Order, ECF No. 2-3, PageID.493.) Petitioner then sought leave to appeal in the Michigan Supreme Court. That court also denied leave. (Mich. Order, ECF No. 2-3, PageID.527.)

Petitioner then returned to the trial court and raised, by way of a motion for relief from judgment, the thirteen issues he raises in his habeas petition. Petitioner claimed that he had raised all thirteen issues in the Michigan Court of Appeals and the Michigan Supreme Court during his previous appeals, but that the appellate courts had not ruled on them. (Pet'r's Br., ECF No. 2-3, PageID.585.) The trial court disagreed, noting that the Michigan Court of Appeals had denied leave for lack of merit in the grounds presented each time. (Kent Cty. Cir. Ct. Order 5, ECF No. 2-3, PageID.591-592.) Accordingly, the trial court reasoned, relief from judgment was barred by Mich. Ct. R. 6.508(D)(2) because Petitioner had failed to demonstrate a retroactive change in the

law as required by the rule.  (*Id.*)  Petitioner sought leave to appeal that denial in both Michigan appellate courts.  Both courts denied leave.  (Mich. Ct. App. Order, ECF No. 2-3, PageID.657; Mich. Order, ECF No. 2-2, PageID.399.)  Petitioner then filed the instant petition.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly

established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

10

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Validity of Petitioner's Plea (Habeas Issues I, II, III, IV, and XIII)

Petitioner first contends that the trial court erred when it did not permit Petitioner to withdraw his plea.  Such a claim is not cognizable on habeas review.   A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether Petitioner should have been allowed, in the court's discretion, to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Petitioner also contends his plea was improper because it lacked a factual basis. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution.  While states are free to adopt procedural rules requiring a factual basis as Michigan has done in Mich. Ct. R. 6.610(E)(1)(a), the Federal Constitution does not mandate them to do so.  *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)).  Petitioner's claim regarding the absence of a factual basis for his plea is, also, not cognizable on habeas review.

Petitioner also argues that his plea was invalid because it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Alford*, 400 U.S. at 31). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F.2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy*, 516 F.2d at 1385; *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13

(1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner offers several reasons to invalidate his plea.

## A.     The plea was illusory

A plea agreement is deemed involuntary and unknowing if a defendant is unaware that the prosecution's promise is illusory. *United States v. Randolph*, 230 F.3d 250-51 (6th Cir. 2000). Petitioner claims his plea was illusory because mandatory life was not a possibility. The only reference to "mandatory life" is in the order of remand. The prosecutor agreed to forego seeking a life sentence, but there was never a possibility that Petitioner would face mandatory life for the crimes with which he was charged. *Compare* Mich. Comp. Laws § 750.349(3) ("A person who commits the crime of kidnapping is guilty of a felony punishable by imprisonment for life or any term of years . . . .") *with* Mich. Comp. Laws § 750.316 ("[A] person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life without eligibility for parole . . . ."). The order of remand, in setting out the terms of the plea, references the parties' agreement that Petitioner would be sentenced to "a term of years, not mandatory life." (Kent Cty. Cir. Ct. Order, ECF No. 2-1, PageID.101.) The inclusion of the word "mandatory" appears to be an error by the trial court.

Although Petitioner was not subject to a mandatory life sentence, he was at risk of a life sentence. Mich. Comp. Laws § 750.349(3). By taking a possible life sentence off the table, Petitioner received a benefit. Indeed, even though prisoners sentenced to a life term might be paroled, "[t]he Michigan Parole Board rarely grants [them] parole . . . ." *McAdoo v. Elo*, 365 F.3d 487, 497 (6th Cir. 2004). Therefore, the prosecutor's promise to forego a life sentence was not illusory.

In hindsight, after the trial court imposed consecutive sentences with a minimum term of 30 years, the value of eliminating the possibility of a life sentence may have diminished to a certain extent. But this issue is not evaluated with the benefit of hindsight. "[T]he determination of whether a plea is illusory must be based on circumstances existing at the time the decision to plead guilty was made, not at a later time, when additional facts may have been discovered . . . ." *Cross v. Barrett*, No. 1:14-cv-530, 2014 WL 2778111, at *12 (W.D. Mich. June 19, 2014) (citing *Brady*, 397 U.S. at 742). Accordingly, the Michigan Court of Appeals' rejection of Petitioner's illusory plea claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

**B.      Undisclosed medical report**

Petitioner contends that the prosecutor improperly withheld a medical report relating to injuries suffered by the victim the night of the kidnapping. Those injuries impacted Petitioner's sentence in two ways: the trial court considered the fact of the injuries in scoring 10 point on Offense Variable 3; and the court ordered Petitioner to pay restitution based on the expenses associated with the injuries. Essentially, therefore, Petitioner complains that he did not understand the consequences that would follow from entering his plea.

Petitioner's suggestion that he would not have entered a plea if he had known the scoring might include 10 points for Offense Variable 3 is entirely disingenuous. The parties estimated a minimum sentence range under the guidelines. (Plea Tr., ECF No. 2-1, PageID.107; Sentencing Tr. I, ECF No. 2-1, PageID.120, 122, 128.) That range included the sentence Petitioner received initially, after his first resentencing, and after his second resentencing. Petitioner cannot say that if he had only understood the consequences, i.e., if he had only known he might receive a

10-year sentence consecutive to a 20-year sentence, he would not have entered his plea, because such a sentence was within the very estimates that prompted his plea. Moreover, if Petitioner prevailed on his argument, the sentences imposed by the trial court—sentences the court announced were proportionate and reasonable to the crime no matter what adjustments were made to the guidelines scoring—would still fall within the newly calculated guidelines range.

The record reasonably supports the factual determinations necessary to the conclusion that Petitioner's claim is meritless. And, the Michigan Court of Appeals rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner's further contention that he would not have entered a guilty plea if he had known that he might have to pay restitution—he was ordered to pay restitution in the amount of $204.31—is also meritless. Because of a statutory mandate, Mich. Comp. Laws § 750.766(2), Michigan courts must order restitution as part of any sentence. Because restitution is mandatory, "it is no longer open to negotiation during the plea-bargaining or sentence-bargaining process, and defendants are on notice that restitution will be part of their sentences." *People v. Ronowski*, 564 N.W.2d 466, 467 (Mich. Ct. App. 1997); *see also Cavin v. Wolfenbarger*, No. 1:05-cv-140, 2008 WL 4425595, at *8 (W.D. Mich. Aug. 19, 2008) (report and recommendation adopted 2008 WL 4425592 (Sept. 6, 2008)) ("In Michigan, restitution is mandatory by law, and therefore, it is not open to negotiation during the plea-bargaining or sentence-bargaining process."). In fact, "[b]y entering into the plea agreement, defendant[s] implicitly agree[ to] pay restitution in an amount accurately determined by the court." *People v. Hart*, 536 N.W.2d 605, 607 (Mich. Ct. App. 1995). Therefore, Petitioner cannot say that if he had known he would have to pay restitution he would

16

not have entered into a plea because restitution is part and parcel of any plea in Michigan. The Michigan Court of Appeals rejection of Petitioner's claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.

### C. Undisclosed costs

In addition to restitution, Petitioner was ordered to pay a Crime Victims' Rights assessment of $130.00, state costs of $204.00, and court costs of $700.00. (J. of Resentence, ECF No. 2-2, PageID.409.) The Crime Victims Rights assessment, like victim restitution, is mandatory. Mich. Comp. Laws § 780.905(1). The state costs, $68.00 per felony for a total of $204.00, are mandatory. Mich. Comp. Laws § 769.1j. The court costs of $700.00 are not mandatory, Mich. Comp. Laws § 769.1k, but the court's authority to impose them was spelled out in the statute at the time Petitioner entered his plea. Moreover, the advice of rights form that Petitioner read, reviewed, understood, and signed before entering his plea (Plea Tr., ECF No. 2-1, PageID.106), clearly indicated that the trial court could impose fines, costs, and other financial obligations.

Where Petitioner was aware that costs could be imposed, but reached no agreement with the prosecutor or the court with regard to the amount of those costs, any claim that his plea was unknowing—that he would not have entered his plea if he was aware of the consequence of having to pay costs—is without merit. The Michigan appellate court's rejection of Petitioner's claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.

### D.    Ineffective assistance of counsel

Petitioner's memorandum is sprinkled with assertions that his counsel rendered ineffective assistance.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate such claims.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances,

the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58-59. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel

that does not relate to the voluntariness of the plea. *See United States. v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001).

Some of Petitioner's claims of ineffective assistance do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional deprivations: the claim that counsel was ineffective for failing to quash Petitioner's allegedly illegal arrest; the claim that counsel was ineffective for failing to suppress his statement to police, a statement that Petitioner claims was coerced; the claim that counsel was unprepared for trial; and the claim that counsel failed to investigate the crimes. Those claims have therefore been waived by his subsequent guilty plea. *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived). Because Petitioner was well aware of these failures at the time he decided to plead guilty, he cannot show prejudice, i.e., that but for counsel's failures he would have insisted on going to trial and not pled guilty.

Some of Petitioner's ineffective assistance claims arguably attack the voluntary and knowing nature of his plea. Petitioner claims that his trial counsel never advised him of the elements of the charged crimes. If Petitioner, indeed, did not know the elements of the crimes, he could not knowingly plead guilty. Even if Petitioner could show that counsel failed to advise Petitioner of the elements, and that the failure was professionally unreasonable, Petitioner could not show prejudice. The order of remand reveals that Petitioner was "re-arraigned" on each charge to which he entered his plea and that the information was read. (Kent Cty. Cir. Ct. Order, ECF No. 2-1, PageID.101.) Therefore, even if counsel failed to advise Petitioner regarding the charged crimes, the court remedied that deficiency before Petitioner entered his plea. Petitioner cannot

reasonably claim that if he only knew the nature of the charged crimes he would not have entered a plea of guilty where the court advised Petitioner of the nature of the charged crimes and he entered his plea anyway.

Petitioner also claims that counsel rendered ineffective assistance by advising Petitioner that he could withdraw his plea if he chose to do so. That would certainly be bad advice. Michigan Court Rule 6.310 regarding plea withdrawal makes clear that withdrawal of a plea after acceptance will be permitted only in very limited circumstances and those circumstances do not include "because the defendant wants to." Mich. Ct. R. 6.310; *see also People v. Montrose*, 506 N.W.2d 565, 567 (Mich. Ct. App. 1993) ("There is no absolute right to withdraw a guilty plea once it has been accepted by the trial court.").

There is nothing in the state court record to support Petitioner's claim that counsel made the statement that Petitioner could withdraw his plea at will. Petitioner never mentioned it at the plea hearing, even when the trial court inquired regarding any other promises. The entire plea colloquy, as well as the advice of rights that Petitioner signed, emphasized that once the court accepted the plea, Petitioner would be giving up rights. Even at sentencing, when Petitioner argued for plea withdrawal, Petitioner did not mention that he should be permitted to withdraw his plea because counsel told him he would be able to do so. Instead, Petitioner argued that he should be permitted to withdraw his plea because counsel rendered ineffective assistance by failing to appropriately prepare for trial.

The state appellate court's rejection of Petitioner's claim is entirely reasonable on this record. Moreover, it is consistent with, not contrary to or an unreasonable application of,

clearly established federal law. Accordingly, Petitioner is not entitled to relief on his claim that the plea was unknowing or involuntary.

### E.    Petitioner's innocence

Finally, Petitioner contends his plea was invalid because he was, in fact, innocent. His argument, however, tells a slightly less compelling story. He claims the evidence before the trial court was insufficient to find guilt on any of the crimes charged.

Petitioner's claim that the evidence against him was insufficient to support a finding of guilt is one of the claims that is waived by his plea. The Advice of Rights form that Petitioner read, understood, and signed states clearly that Petitioner was giving up the right to have the prosecutor prove beyond a reasonable doubt that Petitioner was guilty.

Once a plea is accepted, a subsequent claim of innocence does not call into question the validity of the plea. *Alford*, 400 U.S. at 37-38; *see also Eggers v. Warden*, 826 F.3d 873, 876-77 (6th Cir. 2016). "Reasons other than the fact that he is guilty may induce a defendant to so plead." *Alford*, 400 U.S. at 33. Petitioner's innocence, therefore, is immaterial to the validity of his plea.

Even if Petitioner were innocent of the charged crimes, that fact would not, by itself, warrant habeas relief. Petitioner's claim of actual innocence fails to state a cognizable federal claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." But the *Herrera* Court did not close the door completely, stating in dicta: "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial

would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished

between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free- standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases). Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on a freestanding claim of actual innocence.

## IV. The Prosecutor's Breach of the Plea Agreement (Issue V)

Petitioner contends that the prosecutor breached the plea agreement or otherwise acted improperly in connection with Petitioner's plea. Petitioner claims the prosecutor breached the plea agreement in two respects: first, the prosecutor withheld a medical bill for treatment of injuries to the victim that had the effect of increasing his sentencing guidelines score and served as a foundation for a restitution order; and second, the prosecutor asked the trial court to impose

consecutive sentences when the agreement stated that consecutive sentences would be at the court's discretion.

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry*, 467 U.S. at 509 ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

Petitioner's agreement is memorialized in the plea hearing transcript and then repeated in the trial court's order remanding Petitioner to the Kent County Jail. (Plea Hr'g Tr.,

ECF No. 2-1, PageID.103-111; Kent Cty. Cir. Ct. Order, ECF No. 2-1, PageID.101.) The prosecutor reported the terms of the plea agreement as quoted above. *See* § I.

Conspicuously absent from the plea agreement is any mention of the appropriate scoring of Offense Variable 3 regarding injury to the victim, restitution, costs, or the prosecutor's silence at sentencing with respect to consecutive sentences. Moreover, Petitioner expressly denied the existence of other promises. Therefore, Petitioner has failed to demonstrate that the prosecutor breached the terms of the plea agreement. Accordingly, the Michigan Court of Appeals' rejection of Petitioner's contentions as meritless is factually reasonable on the record and legally unassailable.

### V. Prosecutorial Misconduct (*Brady v. Maryland* Violation) (Issue V)

Petitioner argues that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley,* 473 U.S. 667, 675 (1985) when he failed to provide the medical report for the podiatric injuries to the victim until the day of sentencing. At the sentencing hearing, Petitioner's counsel acknowledged that he received the document immediately prior to the sentencing hearing. (Sentencing Tr. I, ECF No. 2-1, PageID.115-116.)

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

26

Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady v. Maryland* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008) (internal quotations omitted).

Petitioner does not explain how the podiatric report documenting the victim's injury was favorable to the accused. Thus, he cannot establish a *Brady v. Maryland* violation. Moreover, although Petitioner may have been unaware of the document until immediately before the first sentencing, he was fully aware of it thereafter for his second sentencing hearing and his final sentencing hearing. The state appellate court's rejection of Petitioner's *Brady v. Maryland* claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI.    The Court's Breach of the Plea Agreement (Issue VI)

Petitioner argues the trial court breached the plea agreement when it imposed costs and restitution.  For the same reasons the imposition of costs and restitution was not a breach of the plea agreement with respect to the prosecutor, it is not a breach by the court either.  The state appellate court's rejection of the claim as meritless is neither contrary to, nor an unreasonable application of, clearly established federal law.

## VII.    Illegal Arrest and Suppression of Petitioner's Statement (Issue VII)

Petitioner claims that his arrest was illegal and that his statement to the police was coerced and, therefore, should have been suppressed.  As explained in detail in § II, D above, claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See Broce*, 488 U.S. at 569; *Tollett*, 411 U.S. at 267.  Accordingly, Petitioner has waived these claims.

## VIII.   The Court's Bias (Issues VIII)

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case."  *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.  Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias."  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)

(internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009).

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975)). The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow*, 421 U.S. at 47; *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013) (citing, *inter alia*, *Withrow*, 421 U.S. at 47). "The presumption of impartiality stems not merely from the judicial-bias caselaw, but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31 (1992)." *Coley*, 706 F.3d at 751 (parallel citations omitted).

Petitioner does not allege any of the objective indicia of constitutionally impermissible bias. Instead, he relies upon the judge's words at the sentencing hearings as examples of bias. At the original sentencing hearing, the judge stated: "You sir, I believe are a threat to society. I do not believe that you are someone that should be allowed to walk around on

the street." (Sentencing Tr. I, ECF No. 2-1, PageID.130.) Then, at the first resentencing hearing, the judge stated: "You are a very devious, a very evil individual in my opinion, sir." (Sentencing Tr. II, ECF No. 2-1, PageID.245.) Petitioner also claims that the judge's bias is apparent in his decision to repeatedly impose the same sentence despite reductions in the guidelines scores. Finally, Petitioner contends that the judge's bias against him was displayed in the sentencing of Petitioner's co-defendant Goree where the judge stated: "Mr. Reynolds, who was a third co-defendant, who's not being sentenced today, was I believe the brains of this outfit if there was— if that could be used in this term, he certainly was the leader." (Goree Sentencing Tr., ECF No. 2-1, PageID.138.)

In *Liteky v. United States*, 510 U.S. 540 (1994),[1] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. at 583. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v.*

---

[1] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

*United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-56.

The Michigan Court of Appeals, in a form order, rejected Petitioner's bias argument as meritless. But, the fact that the analysis is curt does not make it unreasonable. The record amply supports the conclusion that the trial judge's statements at the sentencing were "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and, thus, "do not constitute a basis for a bias or partiality motion . . . ." *Liteky*, 510 U.S. at 555-56. The court of appeals' rejection of Petitioner's claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.

## IX. Failure to Apply *People v. Lockridge* (Issue IX)

Between Petitioner's first and second resentencing hearings, the Michigan Supreme Court issued its decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). In *Lockridge*, the Michigan Supreme Court held that, under *Alleyne v. United States,* 570 U.S. 99 (2013), the Michigan sentencing guidelines scheme violated the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The supreme court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component

31

of the guidelines and make the guidelines advisory only. *Id.* at 520-21 (relying on *United States v. Booker,* 543 U.S. 220, 264-65 (2005) (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

When the Michigan Court of Appeals remanded to the trial court for the second resentencing, it cautioned the trial court as follows:

> On remand the Trial Court must be mindful that the law related to sentencing has changed since Defendant last appeared before it. In *People v. Lockridge*, 498 Mich. 358 (2015), the Michigan Supreme Court held that although courts must continue to accurately score the sentencing guideline variables, the calculated range is now only advisory.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.341.) Petitioner seizes upon the appellate court's admonition to accurately score the variables as the relevant core of the *Lockridge* decision. Accurately scoring the variables, however, was a requirement both before and after *Lockridge*. The change wrought by *Lockridge*, and the point emphasized by the Michigan Court of Appeals, was the shift in the nature of the calculated guideline from mandatory to advisory. Petitioner does not claim that the trial court failed to treat the guidelines as advisory. At the second resentencing, the trial court indicated that in light of *Lockridge*, he was tempted to go way over the guidelines (Sentencing Tr. III, ECF No. 2-1, PageID.349); thus, it is apparent the court was aware the guidelines were no longer mandatory. Petitioner's contentions that the trial court ignored the appellate court's admonition or that the trial court misapplied *Lockridge* are entirely without merit.

## X. Sentence Guidelines Scoring Errors (Habeas Issue X)

Petitioner contends that the trial court erred in scoring Prior Record Variables 2 and 7 and in scoring all of the Offense Variables. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties

32

of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

To the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546

U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, any claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, any claim that Petitioner's sentence was disproportionate under the Eighth Amendment is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Petitioner also fails to demonstrate a due process violation. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th

Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. With respect to the Offense Variables, he attacks the court's scoring because the facts upon which the court relied were false, but because those facts were not "admitted by the defendant . . . ." (Pet'r's Memorandum, ECF No. 2, PageID.89.) Any persuasive force in that argument was eliminated by *Lockridge*. Once the guidelines were made advisory, the Sixth Amendment no longer required that a Michigan guidelines sentence be based only on facts found by the jury or admitted by the defendant. *Booker*, 543 U.S. at 259. He therefore fails to demonstrate that the court's scoring of the offense variables and resulting sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

With respect to the prior record variables, Petitioner complains that the trial court included within the count of his prior low-severity felonies an attempted breaking and entering offense where Petitioner was assigned to youthful trainee status. The propriety of counting the

offense is not a factual issue, but a legal one, and it rises entirely under state law. Nonetheless, Petitioner is plainly wrong because the sentencing guidelines statutes include within the definition of "conviction" assignment to youthful trainee status. Mich. Comp. Laws § 770.50(4)(a). Petitioner also complains because the court counted two concurrent felony convictions when the home invasion conviction should not have been counted because it resulted in a mandatory consecutive sentence. Although Petitioner is correct on the law, he is wrong on the facts. His home invasion conviction permitted the court to impose a mandatory sentence, but it did not mandate that result. Accordingly, Petitioner's challenges to his Prior Record Variable score are plainly meritless and there is definitely no ground to conclude that Petitioner's sentence violated due process. The state court's rejection of Petitioner's guidelines sentence scoring claim, therefore, is consistent with clearly established federal law.

## XI. Right to Raise Issues on Appeal (Issues XI and XII)

Petitioner claims that he was entitled to file a pro per supplemental appellate brief. His claim is based on the Michigan Supreme Court's administrative order regarding minimum standards for indigent criminal appellate defense services:

> Standard 4
>
> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing in propria persona must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney . . . .

Mich. Administrative Order No. 2004-6. To the extent Petitioner was entitled to file a brief under state law, he raises only a state law issue. As a matter of federal constitutional law, however, it is clearly established that there is no "constitutional right to self-representation on direct appeal from

36

a criminal conviction." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000). The Sixth Circuit has determined that the *Martinez* holding "contradicts the . . . assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). On that foundation, the federal courts in Michigan have concluded that appellate counsel's failures to comply with Standard 4, or the similar provision that preceded it (Standard 11 of Mich. Admin. Order 1981-7) does not raise a federal constitutional issue. *See Gates v. Hoffner*, No. 1:13-cv-713, 2017 WL 4083190 (W.D. Mich. Aug. 17, 2017); *Bennett v. Curtin*, No. 10-14394, 2012 WL 5363571 (E.D. Mich. Oct. 30, 2012); *Naturalite v. Scutt*, No. 2:09-cv-73, 2011 WL 206154 (W.D. Mich. Jan. 21, 2011); *Hardiman v. Curtin*, No. 1:06-cv-177, 2009 WL 2616259 (W.D. Mich. Feb. 13, 2009); *Dowdy v. Sherry*, No. 06-CV-10735, 2008 WL 5188827 (E.D.Mich. Dec.10, 2008); *Jones v. Jones*, No. 1:04-cv-309, 2007 WL 2219356 (W.D. Mich. July 30, 2007).

Petitioner mentions that part of the reason he was not able to file his Standard 4 brief is because his appellate counsel, Gerald Ferry, refused to file it on Petitioner's behalf. Petitioner cannot succeed in a claim that Attorney Ferry, in refusing to file Petitioner's standard 4 brief, rendered ineffective assistance of counsel because Petitioner could not show the result would have been different absent Ferry's refusal. Petitioner had the opportunity to raise every issue he wanted to by filing Standard 4 briefs or pro per briefs in his appeals. Thus, all of the issues Petitioner contends Ferry should have raised were before the appellate court. Moreover, the court of appeals concluded those issues were meritless.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating

38

that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. The Court will enter a judgment and order consistent with this opinion.

Dated:  July 17, 2019            /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 United States District Judge